UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CEDAR RIDGE, LLC.                               CIVIL ACTION

VERSUS                                          NO: 13-672

LANDMARK AMERICAN                               SECTION: "I" (4)
INSURANCE COMPANY, ET AL.

ORDER

Before the Court is a **Motion for Leave to File Third Party Complaint (R. Doc. 17)**, filed

by Defendants, Landmark American Insurance Company, ("LAIC") and RSUI Indemnity Company,

("RSUI"), seeking leave of the Court to file a third party complaint against Roof  Technologies, Inc.,

("Roof Tech").  Plaintiff, Cedar Ridge, LLC, ("Cedar") has opposed the motion. (R. Doc. 18). The

motion was heard by oral argument on September 4, 2013.

I.      Background

Plaintiff Cedar, in its Complaint, alleges that it is the owner of property referred to as

Riverlands Shopping Center, ("Riverlands") located in Laplace, Louisiana. (R. Doc. 1).  Cedar alleges

that at all relevant times of this litigation, Riverlands was insured under a commercial property

insurance policy, issued by the Defendants LAUI and RSUI.  *Id.* at 3.  The specific insurance provision

that is at issue here is "CP 10 30 06 07 of the LAUI policy," which excludes coverage for damage

occasioned by faulty repair or workmanship.  (R. Doc. 17-2)  Cedar alleges that  LAUI and RSUI are

insurance companies authorized and licensed to transact insurance business in Louisiana, with their

principal place of business in Atlanta, Georgia. *Id.* Cedar alleges this Court has proper subject matter jurisdiction, pursuant to 28 U.S.C. § 1332. *Id.* at 2.

Cedar alleges that on or around August 29, 2012, Hurricane Isaac caused extensive water damage to the roof and interior of Riverlands, which required the entire roof to be replaced. *Id.* at 3. On September 4, 2012, Cedar allegedly hired repair workers from "Roof Tech"to fasten and install tarps to the damaged portions of the roof, in an effort to mitigate damages to the roof membranes, and reduce the inflow of water. *Id.* Cedar alleges"Roof Tech" is a multi-state roofing company with extensive experience in mitigating hurricane damages to roof membranes. *Id. See also* (R. Doc. 18).

On September 14, 2012, Cedar alleges that it filed a "Property Loss Notice" with LAUI and RSUI, to put both on notice of its property damages. *Id.* Around the same time, Cedar retained Mr. Ray Gonzales of Property Damage Consultants, LLC, ("PDC"), to determine the repair costs of the roof replacement. *Id. See also* (R. Doc. 17-2, p. 5). Cedar alleges PDC determined the repair costs to be in excess of $2.8 million dollars. *Id.*

Shortly thereafter, LAUI retained its own alleged expert, Engle Martin & Associates, Inc., ("Engle") to adjust Cedar's claim of loss at Riverlands. (R. Doc. 1, p. 3). On behalf of Engle, Unified Building Services ("UBS") and Unified Building Sciences & Engineering ("UBSE") inspected the roof and the temporary repairs by Roof Tech. (R. Doc. 17-2, p. 5). UBSE issued an investigative report that allegedly "opined the splits in the roof caused by Hurricane Isaac were minimal and could have been repaired, but *additional damage was caused by Roof Tech's installation of the tarps* with *nailing strips, screws and asphalt roof cement." Id.* at 5, *citing* ("Exhibit 1" UBSE's Roofing Investigation Report) (emphasis added).

Cedar alleges that it sent a demand letter to LAUI on November 3, 2012, including PDC's $2.8

million dollar cost determination, and advised Landmark that if it failed to make payments consistent with the insurance agreement by February 11, 2013, it would be liable for "bad faith damages pursuant to La. R.S 22:1973." *Id.* at 4.  On January 14, 2013, Cedar alleges Engle responded to its demand letter with a statement that no payment was owed because the direct physical loss "due solely to wind" was less than the policy deductible.  *Id.* at 4.

Cedar subsequently filed a Complaint in federal court on April 10, 2013, alleging that it paid $772,079.00 for roof repairs, and that it faced an additional $1,000,000 in repair costs.  (R. Doc. 1). Cedar also seeks damages against LAUI & RSUI for breach of contract, breach of the duty of good faith and fair dealing pursuant to La. R.S 22:1973, and for breach of its statutory duty owed under La. R.S 22:1892.  *Id.*

Defendants LAUI and RSUI answered the Complaint on May 29, 2013.  (R. Doc. 7). Defendants denied most of the allegations in the plaintiff's complaint, and specifically denied coverage for the roof damage, citing to an express exclusion provision in the liability policy (CP 10 30 06 07 of LAUI policy) which stated that "loss caused by or resulting from faulty, inadequate or defective ... design, specifications, workmanship, repair, construction, renovation, or remodeling," will not be paid by LAUI.  *Id. See also* (R. Doc. 17-2, p. 5).

A preliminary conference order was issued on June 27, 2013, which set forth a deadline of July 26, 2013, for "amendments to pleadings, third-party actions, crossclaims and counterclaims." (R. Doc. 10).  On July 25, 2013, LAUI filed a timely, but deficient,[1] third-party complaint against "Roof Tech." (R. Doc. 14, 16).  LAUI and RSUI were given seven days to correct the deficiency. *Id.* LAUI and RSUI subsequently filed a proper Motion for Leave to File Third-Party Complaint on July 31, 2013,

---

[1] The Clerk found the pleading deficient because it did not seek proper leave of court.

which is the motion presently before this court. (R. Doc. 17).[2] The motion was opposed.  (R. Doc. 18).

A reply to the opposition was also filed. (R. Doc. 23).

## II.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 14(a)(1) states that "[a] defending party may, as a

third-party plaintiff, serve a summons and complaint on a nonparty who is or **may** be liable to it for

all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave

if it filed the third-party complaint more than 14 days after serving its original answer."  *Id* (emphasis

added).    Courts are granted wide discretion in determining whether to permit third-party claims.

*McDonald v. Union Carbide Corp.*, 734 F.2d 182, 184 (5th Cir. 1984).

Courts have applied several factors when deciding whether to allow a third-party complaint.

The factors are: "(1) prejudice placed on the other parties, (2) undue delay by adding the third-party

plaintiff, (3) lack of substance to the third-party claim, and (4) advancing the purposes of Rule 14

(such as avoiding duplicative suits on closely related issues)."  *Id.* at 183 (citation omitted).  "The mere

fact that the alleged third-party claim arises from the same transaction or set of facts as the original

claim is not enough."  *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 5989206, at *3 (S.D.

Tex. Nov. 29, 2012) (citation omitted).

A court's discretion is improper where the third-party plaintiff "cannot show a basis for the

third-party defendant's liability to the third-party plaintiff."  *McCain v. Clearview Dodge Sales, Inc.*,

574 F.2d 848, 849-50 (5th Cir. 1978).  Thus, a third-party defendant "must necessarily be *liable over*

---

[2]The Court recognizes the deadline to file amended pleadings in this case was July 26, 2013.  (R. Doc. 10).
Defendants' filed the instant motion on July 25, 2013, but it was marked deficient by the clerk's office. (R. Doc. 14).
The docket entry provided by the clerk's office gave Defendants seven days to cure the deficiency in the original
pleading. Defendants filed a satisfactory Motion for Leave to File Third Party Complaint on July 31, 2013, which
was within seven days of July 25, 2013. (R. Doc. 17). Therefore, the motion was timely filed under the Court's
Scheduling Order.

to the defendant for all or part of the plaintiff's recovery, or that the defendant must attempt to *pass on* to the third party all or part of the liability asserted against the defendant." *United States v. Joe Grasson & Son, Inc.*, 380 F.2d 749, 750-52 (5th Cir. 1967); *United States ex rel. Branch Consultants, LLC v. Allstate Insurance Co.*, 265 F.R.D. 266, 272 (E.D. La. 2010) (quoting *Joe Grasson*).

Rule 14(a) exists to bring in "third parties who are *derivatively* liable to the impleading party." *Vinmar*, at 2012 WL 5989206, *3 (*citing Hassan v. La. Dep't of Transp.& Dev.*, 1999 WL 642861, at *2 (5th Cir. July 26, 1999))(emphasis in original); *see also Briones v. Smith Dairy Queens, Ltd.*, 2008 WL 4200931, at *2 (S.D. Tex. Sept. 9, 2008) ("[s]uch complaints require that the 'defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff.'") (*quoting Anadarko Petrol. Corp. v. Great Plains Gas Compression, Inc.*, 2007 WL 38327, at *1 (S.D. Tex. Jan. 4, 2007)).

## III.   Analysis

To determine whether or not Roof Tech is a proper third-party defendant, the Court must determine if Roof Tech may be derivatively liable to LAUI & RSUI, the impleading parties.  Here, LAUI & RSUI contend that they are not liable to Cedar for any payment under the insurance policy, but in the event that they may be, Roof Tech is liable to them for the damage that it caused to the roof of the property after Hurricane Isaac.  (R. Doc. 17, p. 2).  LAUI and RSUI contend that had it not been but-for Roof Tech's faulty and deficient installation, the roof would not require full replacement.  *Id.* Therefore, LAUI & RSUI argue that Roof Tech should be added as a third-party defendant for all or part of the recovery Cedar may have against it.  To determine whether or not Roof Tech is a proper third party defendant, the court weighed the factors set out in *McDonald*:

### A.   Prejudice Placed on the Other Parties

LAUI & RSUI contend that if they are liable to Cedar for any payment under the insurance

policy, Roof Tech is liable to them for the damage that it caused to the roof of the property, as a result not, including Roof as a third-party Defendant would prejudice their rights.  (R. Doc. 17, p. 2).

Cedar argues that LAUI & RSUI are merely attempting to circumvent their liability under the insurance policy, and that this is not relevant as to the insurance coverage at dispute.  (R. Doc 18). Cedar also contends that permitting the third-party complaint would complicate the litigation and prejudice the plaintiffs.  *Id.*

"Prejudice" against other parties is somewhat fact-intensive.  Courts weigh the prejudice factor against the potential risk of a party being forced to litigate separate suits, thereby increasing expenses and or legal costs, in the event the third-party defendant is not impled in the action.  *Vinmar*, at 6. Prejudice may also exist where the addition of the third-party will inconvenience the parties in the action by delaying recovery, or otherwise complicating litigation.  *Id.; see also Crews v. Country of Nassau,* 612 F. Supp. 2d 199 (E.D. N.Y. 2009); *Hancock v. Chicago Title Ins. Co.,* 263 F.R.D. 383 (N.D. Tex. 2009).

Likewise, when the addition of a third-party defendant will not unnecessarily complicate or otherwise cause disadvantages amongst the parties, any potential prejudice may be outweighed by the advantages of efficient resolution of the action. *See* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1443, n.10 (3d ed. 2010); *see also Am. Fid. & Cas. Co. v. Greyhound Corp*., 232 F.2d 89, 92 (5th Cir. 1956).

After considering both parties arguments, the Court finds that the addition of Roof Tech does not create a severe or significant risk of prejudice to the existing parties.  The addition of Roof Tech does not absolve any potential liability LAUI & RSUI may have to Cedar, rather it provides a recourse for LAUI & RSUI to recover reimbursement for payments it may be forced to pay for the allegedly faulty repair of Roof Tech.  Although Roof Tech will be forced to litigate a claim, if Roof Tech's

repair was at least a contributing factor of Cedar's damages, LAUI & RSUI could institute a separate action against it outside of the instant action presently before the Court.  This factor weighs in favor of allowing Roof Tech to be joined as a third-party defendant.

> **B.**     **Undue Delay**

In support of their motion, LAUI and RSUI argue that the joinder of Roof Tech will not delay the action, nor cause prejudice as the suit is in the initial phases.  (R. Doc. 17-2, p. 8).  The discovery deadline is not until October 29, 2013, and only written discovery has been taken by the parties.  *Id.*

In opposition, Cedar argues that the addition will complicate litigation.  However it does not give any other reason in support of why the addition would complicate, or delay the litigation.  (R. Doc. 18).

Undue delay is a factor that would weigh against the addition of a third-party defendant when the addition of this party would delay completion of discovery, or would unnecessarily complicate the litigation between parties that are already present.  *See* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1443, n.13 (3d ed. 2010); *see also Highlands Ins. Co. v. Lewis Rail Serv. Co.,* 10 F.3d 1247 (7th Cir.1993) (defendant's motion for leave to file third-party complaint was denied because he waited until after discovery and three weeks before summary-judgment motions were due, with no excuse other than to save money); *see also DeRubeis v. Witten Tech's, Inc.,* 244 F.R.D. 676 (N.D. Ga. 2007) (denying leave to file third-party complaint because the addition of the third-party would expand the scope and create uncertainty in an already contentious discovery process); *Saunders v. Jim Emes Petroleum Co., Inc.,* 101 F.R.D. 405 (W.D. Pa. 1983); *Connell v. Bernstein-Macauley, Inc.*, 67 F.R.D. 111 (S.D.N.Y. 1975).

After considering both parties arguments, that because this action is in the early stages of the litigation, the addition of Roof Tech will not cause an undue delay of adjudicating the merits of the

underlying motion.  Therefore, this factor weighs in favor of granting leave to file the third–party complaint.

### C.  <u>Lack of Substance to the Third Party Claim</u>

In support of their motion, Defendants LAUI and RSUI argue that Roof Tech, pursuant to Rule 14(a)(1), should be added to the suit between it and Cedar because Roof Tech's temporary roof repairs and installation of the tarps with "nailing strips, screws and asphalt roof cement," caused additional damages to the roof that would have been minimal and could have been repaired without needing a complete roof replacement.  (R. Doc. 17-2, p. 5, *citing* "Exhibit 1").  LAUI and RSUI argue that because of Roof Tech's potential liability, the addition of it as a Third Party is proper under Rule 14(a)(1), as Roof Tech "may be liable" to LAUI and RSUI for all or part of Cedar's claim against it. (R. Doc. 17-2).

LAUI and RSUI support this argument with UBSE's investigative report following the inspection of the roof and temporary repairs made by Roof Tech.  *Id.*  They contend that UBSE investigators returned to Riverlands in October 2012 and "observed a peel and stick" type material that had been installed deficiently to "cover the cuts" and temporary repair locations on the roof.  *Id.* USBE reported that this technique allowed moisture intrusion, which allegedly caused widespread damage.  *Id.*  Because of the widespread distribution of the cuts made by Roof Tech, isolated repairs were unfeasible; instead the entire roof required replacing.  *Id.* at 2.  Therefore LAUI  seeks to add Roof Tech as a Third Party because Roof Tech's allegedly defective, faulty, inadequate repairs and workmanship to the roof, may have caused additional damages for which the LAUI policy excludes coverage.  *Id.* at 7.[3]

---

[3]Although this argument is not relevant to the current Third Party Complaint before the Court, LAUI and RSUI also argue that even in the event that the roof damages were not excluded under the commercial insurance policy of Cedar, they do not owe Cedar any payment, because the direct physical loss (as per UBSE's Investigative

In opposition, Cedar argues that LAUI & RSUI are merely attempting to circumvent their liability under the insurance policy, and that this is not relevant as to the insurance coverage at dispute. (R. Doc. 18).  Cedar also contends that permitting the third-party complaint would complicate the litigation and prejudice the plaintiffs.  *Id.*  Cedar argues that because the performance quality has no bearing on the issue of coverage, the Defendants' cannot show a basis for liability of Roof Tech on the principal demand, so as to satisfy the requirements of Rule 14(a)(1).  *Id.* at 2; *citing McCain v. Clearview Dodge Sales, Inc.,* 574 F.2d 848, 849 (5th Cir. 1978).

Rule 14(a) impleader does not require an identity of claims, or even that the third-party claim rest of the same theory as the principal demand.  *Vinmar,* at *5; citing *Am. Fid.*, 232 F.2d at 92.  But impleader does require that the liability of the "third-party defendant be dependent on the liability of the third-party plaintiff," so that substance, or plausibility, exists as to the third-party demand.  *Vinmar,* at *5; *citing Fischbach v. Capital One Bank (USA), N.A.*, 2011 WL 71207, at *3 (D. Minn. Jan. 7, 2011)(citations omitted); see also *Briones,* 2008 WL 4200931, at *2; *U.S. v. Sensient Colors, Inc.*, 2009 WL 394317, at *11 (D.N.J. Feb 13, 2009); *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008)("[A] third-party complaint must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant ... [t]he third-party complaint is in the nature of an indemnity or contribution claim." (citations omitted)).

Indemnity may be "may be "express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement." *Marco Ltd. Partnership v. Bruks-Klockner, Inc*., 430 Fed. App'x 332, 335 (5th Cir. 2011). Indemnity "is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to

---

Report) due solely to wind is less than the policy deductible, which is $378,000.00. (R. Doc. 17-2).  Therefore, it is LAUI and RSUI's position that no payment is owed under the policy.  *Id.*

have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss." *Marco*, 430 Fed. App'x at 335; (*citing* 42 C.J.S. Indemnity at § 2 (1991)). A claim for legal indemnity "arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to be imposed." *Id.* (citation omitted).

A third-party claim for indemnity should be dismissed if "[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings ... in the light most favorable to [the party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault." *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267–68 (5th Cir.1991) (citation and internal quotation marks omitted). In determining whether a theoretical basis for indemnity exists, "[s]crutiny is ... directed at the nature ... of the fault, if any, of the party seeking indemnity." *Ducre v. Exec. Officers of Halter Marine, Inc.*, 752 F.2d 976, 984–85 (5th Cir.1985) (construing Louisiana law). An action for indemnity will lie so long as the party's fault "can be characterized as merely technical or constructive," and where the party "was exposed to liability and compelled to pay damages ... on account of the negligent act of" the third-party defendant." *Id.* This factor weighs in favor of granting Defendants Motion for Leave to File Third Party Complaint, for the reasons detailed above. (R. Doc. 17-2). Furthermore, in a factually similar scenario, the Fifth Circuit in *Martco,* overruled the District Court's dismissal of a third-party complaint due to the district court's narrow interpretation of Louisiana indemnity law. *Marco,* 430 Fed. App'x at 332. In *Marco*, a customer brought an action against an equipment manufacturer who allegedly sold it defective equipment. *Id.* The Manufacturer filed a third-party complaint seeking indemnity from an engineering firm that provided it with designs for the equipment. *Id.* The District Court originally held that non-contractual indemnity was limited to the context of employer-employee or contractor-subcontractor relationships, and dismissed the

10

engineering firm because "preparing defective designs is not a viable indemnity claim under Louisiana law . . . and for [third party defendant] to have true derivative liability, it would have [had] to be directly liable to the Plaintiff for the defective designs themselves." *Martco,* at 336.

However, the Fifth Circuit overruled the District Court's decision, stating that at the third-party complaint stage, "we are only concerned whether [third-party plaintiff] has stated in its third-party complaint, a plausible basis for an entitlement to legal indemnity . . . [and] we do not decide whether, or under what circumstances any of the theories of relief will ultimately support an indemnity claim." *Id.* at 338.

After considering both parties arguments, the Court finds that the third-party demand against Roof-Tech should be allowed, as LAUI & RSUI validly stated a plausible claim for indemnity.

    **4**.      **Advancing the Purposes of Rule 14: Avoiding Duplicative Litigation**

In support of their motion, LAUI and RSUI argue that denying the Third Party Complaint will produce duplicate actions, as they will be forced to file a separate action against Roof Tech for contribution payment, leading to the possibility of inconsistent decisions.  (R. Doc. 17-2, p. 8).  Cedar never addressed this argument.

Here, as analyzed under the prejudice and substance factors, it is likely that denying the Motion for Leave to File the Third-Party Complaint would produce duplicative litigation, as LAUI and RSUI would be forced to bring their potential claim against Roof Tech in a separate suit.  *Id.*  Therefore, this factor heavily weighs in favor of granting the Motion for Leave to File Third-Party Complaint.

Based on the above law and facts, this Court finds that all four factors were satisfied by LAUI and RSUI. Therefore the Court herein grants the request for leave to file a Third-Party Complaint against Roof Tech.

**IV.   <u>Conclusion</u>**

    **Accordingly,**

    **IT IS ORDERED** that Defendants, LAUI and RSUI's **Motion for Leave to File Third-Party Complaint** (R.Doc.17)  is **GRANTED.** ´

                         New Orleans, Louisiana, this 10th day of September 2013.

                                          **KAREN WELLS ROBY**
                              **UNITED STATES MAGISTRATE JUDGE**

12