UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CEDAR RIDGE, LLC                                CIVIL ACTION NO. 2:13 cv 672

    Plaintiff,

v.

LANDMARK AMERICAN INSURANCE              JUDGE: "I"
COMPANY AND RSUI INDEMNITY
COMPANY

    Defendants.                                 MAGISTRATE: "4"

FILED: _____          _____
                                         DEPUTY CLERK

## MEMORANDUM IN SUPPORT
## MOTION FOR PROTECTIVE ORDER
## TO LIMIT SCOPE OF RULE 30(b)(6) DEPOSITION AND ACCOMPANYING
## REQUEST FOR PRODUCTION OF DOCUMENTS

MAY IT PLEASE THE COURT:

Defendant, Landmark American Insurance Company (hereinafter referred to as "Landmark"), respectfully submits the following memorandum in support of its Motion for Protective Order to Limit the Scope of the Corporate Deposition scheduled in this matter for December 11, 2013.

### I. Factual Background

Plaintiff, Cedar Ridge, LLC (hereinafter referred to as "Cedar Ridge"), owns the Riverlands Shopping Center located at 1312-1528 W. Airline Hwy., Laplace, Louisiana which was damaged during Hurricane Isaac. Landmark issued Policy No. LHD387065 to Cedar Ridge, LLC. which provided coverage for the property at issue.

Following Hurricane Isaac, plaintiff hired Roof Tech to make temporary repairs to the shopping center's existing roof and also retained Ray Gonzales of Property Damage Consultants

to provide it with an estimate to repair the damage to the property caused by the storm. Mr. Gonzales' repair estimate included the cost to replace the entire roof on the property.

Landmark assigned plaintiff's claim to Philip Ambrose, Engle Martin, & Associates, Inc. to adjust the damage claim. Unified Building Services (UBS) and Unified Building Sciences & Engineering (UBSE) inspected the roof and the temporary repairs to the roof by Roof Tech and opined that the splits in the roof caused by Hurricane Isaac were minimal and could have been repaired but additional damage was caused by Roof Tech's installation of the tarps with nailing strips, screws and asphalt roof cement. Further when UBSE returned to the shopping center in October 2012 it was observed that "peel-and-stick" type material also installed by Roof-Tech to cover the cuts had multiple installation-related deficiencies present throughout the temporary repair locations which allowed moisture intrusion. Based on the UBSE's engineering evaluations, the scope of repair estimates, and relevant Landmark policy provisions and exclusions, Cedar Ridge was advised that the direct physical loss due solely to wind was less than the policy deductible which is $378,000.00 and no payment was owed under the policy.

Plaintiff filed its Complaint on April 10, 2013 and alleged breach of contract and bad faith on the part of the defendants for failure to pay the amount sufficient to cover the loss. The plaintiff further seeks penalties and attorney fees pursuant to La. R.S. 22:1892 (formerly cited as La. R.S. 22:658) and La. R.S. 22:1973 (formerly La. R.S. 22:1220). On May 30, 2013, Defendants, Landmark and RSUI, filed an Answer to the lawsuit and specifically denied the allegations and claims contained in plaintiff's Complaint. Landmark has filed a third-party demand against Roof Technologies, Inc. To date, the parties have engaged in written discovery but no depositions have been taken.

On September 19, 2013, counsel for plaintiff served upon undersigned a draft Rule 30(b)(6) Notice of Deposition of Landmark. Included with the Notice were two (2) Exhibits

containing thirty seven (37) areas of inquiry to be examined during the deposition labeled Exhibit "A" and thirty seven (37) document production requests labeled Exhibit "B." A copy of the draft Notice is attached hereto as Exhibit "1." A lengthy discovery conference was held on October 14, 2013 to discuss the scope of the deposition. Many of the issues regarding the scope of the notice were resolved however there still remained certain areas of inquiry and document requests to which Landmark objects. During the discovery conference, it was quite clear that there remained areas which the parties could not agree on. Plaintiff's counsel advised that they would provide a revised notice to undersigned.

On November 11, 2013, plaintiff served Landmark with a notice of Federal Rule 30(b)(6) deposition scheduled for December 11, 2013 in Atlanta, Georgia. A copy of the final notice is attached as Exhibit "2." After reviewing the final notice, undersigned counsel advised plaintiff's counsel that there still remained issues which were unresolved regarding the scope of the deposition. The items of inquiry and requests, to be discussed in greater detail below, are vague in the extreme and require an overly broad search for documents that bear no relevance on the question of liability and otherwise have no evidentiary value whatsoever. This is no more than an impermissible fishing expedition by which plaintiff hopes to gain information that has no relationship to the claims or defenses of a party to this suit.

Landmark has timely filed this motion.

II. **Legal Analysis**

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(6). However, discovery has "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed. 2d 253 (1978). Relevant evidence means evidence having any tendency to make the

existence of any <u>fact that is of consequence to the determination of the action</u> more probable or less probable than it would be without the evidence. Fed. C. Evid. 401 (emphasis added).

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at state in the action and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(C). Furthermore, a party from whom discovery is sought may move for a protective order to protect it from undue burden or expense and forbidding the discovery, specifying the terms for the discovery, forbidding inquiry into certain matters, limiting the scope of discovery to certain matters, and/or requiring that commercial information not be revealed. Fed. R. Civ. P. 26(c)(1).

Landmark seeks an Order from this court designating the scope of the 30(b)(6) deposition and limiting plaintiff's inquiry during the deposition to relevant factual issues involved in the handling of plaintiff's claim and Landmark's policies and procedures in the handling of this Isaac claim.

### III. **Evidentiary Inquiry**

In its Complaint, plaintiff has alleged breach of contract, breach of duty and bad faith under La. R.S. 22:1973 and breach of duty and bad faith under La. R.S. 22:1892 (Doc. 1).

With regard to the breach of contract claim, plaintiff alleges that the Riverland Shopping Center sustained damages as a result of Hurricane Isaac and Landmark has not complied with its obligations pursuant to the insurance agreement. (Count I). Landmark's obligations to the plaintiff are governed by the terms of the policy, which is a contract. Under Louisiana law, an insurance contract is a contract between the two parties, the policyholder and the insurance company, and it has the effect of law between the parties. Like other contracts, a contract of

insurance is to be enforced according to its terms, and the respective rights and obligations for the parties, both the policyholder and the insurance company, will be determined by the terms and provisions of the insurance contract. The words of the policy determine the extent of the insurance coverage.

In order to recover for breach of an insurance contract, plaintiff must prove the following elements by a preponderance of the evidence: (1) that a valid enforceable contract existed between the parties; (2) that the claim for damage being made under the policy is covered by the policy; (3) the amount of the claim for damage under the contract; and (4) that Landmark breached the policy by failing to pay a covered claim.

Cedar Ridge also seeks penalties from Landmark under La. R.S. 22:1973 (formerly 22:1220). (Count II) Under this statute, Cedar Ridge claims: (1) Landmark failed to pay an undisputed portion of the insurance contract within sixty (60) days after receiving satisfactory proof of loss and such failure was arbitrary, capricious, and without probable cause [La. R.S. 22:1973(B)(5)]and (2) Landmark misrepresented material facts pertinent to a coverage issue by claiming that the replacement of the roof was not made necessary by the storm but by the temporary repairs performed by Roof Tech and therefore was subject to an exclusion contained in the policy [La. R.S. 22:1973(B)(1)]. Plaintiff must prove by a preponderance of the evidence that Cedar Ridge failed to pay the amount of their claim within sixty (60) days after it received satisfactory proof of loss and such failure was arbitrary, capricious or without probable cause or misrepresented facts relative to the cause of the damage to the shopping center roof after the storm.

In addition to seeking penalties under La. R.S. 22:1973, Cedar Ridge seeks penalties under La. R.S. 22: 1892 (formerly 22:658). Under this statute, Cedar Ridge claims: (1) Landmark failed to pay the amount of the loss within thirty (30) days of receipt of satisfactory

7

proof of loss [La. R.S. 22:1892(A)(1)] and (2) Landmark failed to make a written offer to settle the claim within thirty (30) days of receiving satisfactory proof of loss [La. R.S. 22:1892(A)(4)]. Cedar Ridge must prove by a preponderance of the evidence that Landmark received a satisfactory proof of loss and failed to make pay the claim or make a written offer of settlement within thirty (30) days.

IV. **Specific Objections to Plaintiff's Proposed Areas of Inquiry and Request for Production of Documents**

9. **The method(s) utilized to estimate or calculate the damages and losses (including repair costs) claimed by or paid to Louisiana residents who made Isaac-related property damage claims. If any computer software was utilized in estimating or calculating any such claims, the name, version, and developer/manufacturer of each such software (including changes of the versions used from time to time).**

10. **With respect to any and all software referred to in your response to the preceding interrogatory, the method by which its price data base (reflecting repair costs) was established and updated from time to time, the guidelines, protocols, and/or efforts established or undertaken by you to ensure that the price database reflected current repair costs in the Greater Laplace area, and whether and under what circumstances field and/or in-house claims personnel were permitted or required to depart from the prices (repair costs) reflected in the database or add to the pricing items reflected in the database or add to the pricing items reflected in the database.**

These two (2) areas of inquiry and document requests bear no relevance whatsoever to the allegations made by plaintiff in this matter. The Complaint lacks any allegation that damages were improperly calculated or that the pricing used by the adjusters in calculating Isaac related property damage claims was incorrect, out of date or faulty. Nothing in the requested testimony or document production will help the jury determine if Landmark breached the insurance contract or was in bad faith when adjusting plaintiff's claim.

11. **All training routinely provided to (or undertaken at your request by) adjusters who performed services on your behalf in connection with Hurricane Isaac, specifically including in your response any training such persons received with respect to any adjusting software referred to in your response to either of the two preceding interrogatories.**

8

This area of inquiry is overly broad in that it seeks testimony and documents related to the training of all adjusters performing services during the storm and includes training related to adjusting software. As stated above, there is no allegation that the adjuster handling this claim was not knowledgeable as to the adjusting software that he utilized in adjusting Hurricane Isaac claims. Further, there is no allegation that the method of pricing was invalid or improper.

12. **All other methods, in addition to the information provided in response to No. 10, by which you established, updated, and communicated repair costs to be used in calculating damage estimates for your insured's properties, and all guidelines, protocols, and/or efforts established or undertaken by you to ensure that repair costs reflected current repair costs.**

This area of inquiry and production request seeks information that has no evidentiary value whatsoever in this matter. Again, the methods used in calculating repair costs are not relevant to any of the claims made by plaintiff in this matter and will not assist the jury at trial.

15. **Every coverage form you utilized in Louisiana as of August 29, 2012, with respect to commercial properties, and identify every coverage form for which you sought or intended to seek approval for use in Louisiana as of that date.**

Landmark objects to this area of inquiry and document production on the basis that coverage forms utilized for commercial properties is not relevant to the plaintiff's claims for breach of contract or for bad faith damages nor is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff does not allege that the insurance coverage forms in its policy were not approved for use in Louisiana. Plaintiff alleges that Landmark breached the terms of its insurance contract. Further the request for all coverage forms Landmark sought approval for in Louisiana prior to Hurricane Isaac is overly broad and burdensome nor would testimony or documents on this subject assist

the fact finder determine if Landmark breached its insurance contract with plaintiff or if Landmark was in bad faith.

21. **Any legal opinions from either in house counsel or outside counsel regarding claims as a result of Hurricane Isaac, and whether any of these opinions were used or rejected in formulating general policy or any specific policy regarding the Riverlands claim. (*This area of inquiry will be limited to non-privileged opinions*).**

This area of inquiry and document request has been limited to "non-privileged opinions" which is confusing, unclear, vague and overly broad and fails to define what would be considered a legal opinion from in house counsel or outside counsel which would be "non-privileged." Landmark submits that any legal opinions from either its in house counsel or outside counsel regarding Hurricane Isaac claims is privileged and not discoverable.

23. **Your claims handling manuals or guidelines, including additions, deletions and other revisions from previous versions and any other materials used to train claims handlers for use in handling of the kind at issue, including but not limited to broad settlement policies or any changes of policy.**

Landmark requests the court to limit this area of inquiry and document request to claims handling manuals and guidelines relative to the handling of Hurricane Isaac claims. The request for additions, deletions, revisions from previous versions with no limitation of time is overly broad, unduly burdensome. Further, the amount of time, manpower and costs to locate and review these documents far outweighs any benefit to the jury.

26. **Your document retention policy.**

The agreement between counsel during the discovery conference on October 14, 2013 was that this item would be limited to document retention in the claim file for this loss. Therefore, Landmark would request that this area of inquiry and document request be limited as per said agreement.

10

33. <u>**The nature and content of any written communication disseminated to your adjusters and others working on your behalf generally and working specifically in connection with claims asserted as a result of Hurricane Isaac.**</u>

   The agreement between counsel during the discovery conference held on October 14, 2013 was that plaintiff would limit this area of inquiry and document request to written communications to adjusters related to policy procedures and methods in connection with claims asserted as a result of Hurricane Isaac. Therefore, Landmark would request that this area of inquiry and document request be limited as per said agreement.

34. <u>**The nature and content of any oral communication disseminated to your adjusters and others working on your behalf generally and working specifically in connection with claims asserted as a result of Hurricane Isaac.**</u>

   As with Item 33, the agreement between counsel during the discovery conference held on October 14, 2013 was that plaintiff would limit this area of inquiry to oral communications to adjusters related to policy procedures and methods in connection with claims asserted as a result of Hurricane Isaac. Therefore, Landmark would request that this area of inquiry be limited as per said agreement.

35. <u>**All litigation matters in which a corporate representative has testified by deposition or at trial during the past 5 years as a corporate representative for you.**</u>
   Landmark objects to this area of inquiry and the document request on the grounds that prior cases in which a corporate representative has testified by deposition has no relevance whatsoever to the allegations made by plaintiff. The document request could be interpreted to include every document including correspondence with counsel, pleadings, documents produced in discovery related to *any* litigation matter in which Landmark has been involved in the past five (5) years which is clearly unduly burdensome and overly broad. Further, the request seeks documents protected by the attorney-client privilege and work-product doctrine.

## V. Conclusion

For the foregoing reasons, Landmark American Insurance Company respectfully requests this Honorable Court issue an order limiting the scope of the corporate deposition as discussed herein and for all costs associated with this motion.

Respectfully submitted,

BARRY & CO., LLC

s/ Stephen R. Barry
STEPHEN R. BARRY (#21465), T.A.
*A Professional Law Corporation*
KATHLEEN C. MARKSBURY(#1902)
612 Gravier Street
New Orleans, Louisiana 70130
Telephone: (504) 525-5553
Facsimile: (504) 525-1909

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has this date been electronically filed using the CM/ECF service which will notify counsel of record via electronic mail of this filing.
New Orleans, Louisiana, this 18th day of November 2013.

s/ Stephen R. Barry
STEPHEN R. BARRY