**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CEDAR RIDGE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-672** |
| **LANDMARK AMERICAN INSURANCE COMPANY, ET AL.** | **SECTION: "I" (4)** |

**ORDER**

Before the Court is a **Motion for Protective Order to Limit Scope of Rule30(b)(6) Deposition and Accompanying Request for Production of Documents (R. Doc. 51)**, filed by Defendants, Landmark American Insurance Company, ("LAIC") and RSUI Indemnity Company, ("RSUI"), seeking a Protective Order to Limit the Scope of the Corporate Deposition scheduled to take place on December 11, 2013. (R. Doc. 51-1, p. 1). Plaintiff, Cedar Ridge, LLC, ("Cedar Ridge") has opposed the motion. (R. Doc. 60). The motion was heard by oral argument on December 4, 2013.

## I. Background

Cedar Ridge instituted the instant action for damages which were sustained to its commercial property in the Riverlands Shopping Center in Laplace, Louisiana, on or around August 29, 2012, from the aftermath of Hurricane Isaac. (R. Doc. 1). Landmark allegedly issued a commercial property insurance policy, No. LHD387065, on these properties to Cedar Ridge. (R. Doc. 51-1, p.

1).

Following Hurricane Isaac, Cedar Ridge hired Roof Tech Technologies, Inc., ("Roof Tech") to make temporary repairs to the shopping center's roof. *Id.* On September 14, 2012, Cedar Ridge retained Mr. Ray Gonzales of Property Damage Consultants, LLC, ("PDC"), to determine the repair costs of the roof damage, as well as the cost of replacing the entire roof. (R. Doc. 17-2, p. 5; R. Doc. 51-1, p. 2).

Shortly thereafter, LAUI retained its own alleged expert, Engle Martin & Associates, Inc., ("Engle") to adjust Cedar's claim of loss at Riverlands. (R. Doc. 1, p. 3). On behalf of Engle, Unified Building Services ("UBS") and Unified Building Sciences & Engineering ("UBSE") inspected the roof and the temporary repairs by Roof Tech. (R. Doc. 17-2, p. 5; *see also* R. Doc. 51-1, p. 2). UBSE issued an investigative report that allegedly "opined the splits in the roof caused by Hurricane Isaac were minimal and could have been repaired, but *additional damage was caused by Roof Tech's installation of the tarps* with *nailing strips, screws and asphalt roof cement." Id.* at 5.

Furthermore, when UBSE returned in October 2012, LAUI alleges that UBSE observed a "peel and stick" type material that was installed by Roof Tech had "multiple installation related deficiencies throughout the temporary repair locations which allowed moisture intrusion." (R. Doc. 51-1, p. 2). Based on this report and its purported policy exclusions, LAUI was advised that its liability was approximately $378,000.00, which is less than the policy deductible. *Id.* Therefore, LAUI argues that no payment is owed under the policy.

Cedar Ridge filed the instant action in federal court on April 10, 2013, alleging that it paid $772,079.00 for roof repairs, and that it faced an additional $1,000,000 in repair costs, as well as seeking damages against LAUI & RSUI for breach of contract, breach of the duty of good faith and

fair dealing pursuant to La. R.S 22:1973, and for breach of its statutory duty owed under La. R.S 22:1892. *Id.* LAUI subsequently filed a third-party demand against Roof Tech on September 10, 2013. (R. Docs. 31, 36).

As to the instant motion, LAUI argues that on September 19, 2013, counsel for Cedar Ridge served on it a draft of the 30(b)(6) deposition of Landmark with two attached exhibits allegedly containing thirty-seven (37) areas of inquiry to be examined during the deposition. (R. Doc. 51-1, p. 3). On October 14, 2013, LAUI contends that it discussed with counsel for Cedar Ridge areas of the draft notice for which it objected. *Id.* LAUI represents that most of these areas were resolved, however, several areas of inquiry remain in conflict as to the scope and breadth of the requests. *Id.* Specifically, LAUI objects to the requests listed below on the basis of vagueness, overbreadth, and irrelevancy to the instant action. As such LAUI filed the instant motion seeking this Court issue a protective order limiting the scope of the 30(b)(6) deposition which has been noticed for December 11, 2013, in Atlanta, Georgia. *Id.*

## II. <u>Standard of Review</u>

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope

of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed.R.Civ.P. 26(c)(1). Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306

(5th Cir.1998); *see also Baggs v. Highland Towing, L.L.C.*,No., No. 99-1318, 1999 U.S. Dist. LEXIS 11450, at *6-7, 1999 WL 539459, at *2 (E.D. La. July 22, 1999) (Rule 26(c)(2) orders may be issued only when the moving party makes "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

## III. Analysis

During oral argument on the underlying motion, the Court struck "exhibit B" of the notice of deposition as unwieldy and entirely too broad and cumbersome for the Defendants' to comply with. *See* R. Doc. 51-2, p. 10-11. As such, the remainder of the Court's analysis focuses on the topical areas of "exhibit A" of the notice of deposition for which LAUI objected.

LAUI argues in support of its motion for protective order that the following areas of inquiry ("AOI") are objected to:

> **AOI 9**: The method utilized to estimate or calculate the damages and losses (including repair costs) claimed byor paid to Louisiana residents who made Isaac-related property damage claims. If any computer software was utilized in estimating or calcuating any such claims, the name, version and developer/manufacturer of each such software (including changes of versions from time to time).
>
> **AOI 10:** With respect . . . to software referenced above. . . the method by which its price data base (reflecting repair costs) was established and updated from time to time, the guidelines, protocols and or efforts established or undertaken . . ."

LAUI argues that these two areas bear no relevance whatsoever to the allegations made by Cedar Ridge in this matter as Cedar Ridge has not alleged that damages were improperly calculated, faulty or out of date, as part of its complaint. (R. Doc. 51-1, p. 6).

In opposition, Cedar Ridge argues that it may depose LAUI about "any area" that be relevant to or reasonably calculated to lead to the discovery of relevant evidence. (R. Doc. 60, p. 4). Cedar Ridge argues that these two areas of inquiry cover methods used to calculate damages relative to

Hurricane Isaac claims, and the software used to calculate those damages. *Id.* at 5. Cedar Ridge also argues that because LAUI has received in excess of $1,000,000, in receipts it paid in roof repair, Cedar Ridge believes that this information is relevant, as LAUI contends that the damages to the roof are only $378,000, and therefore under the policy limits. (R. Doc. 60, p. 5-6).

During oral argument, the Court found that as stated, areas of inquiry ("AOI") Nos. 9 and 10 posed fair questions that may be asked regarding insurance claims. Therefore, the Court overruled LAUI's objection in part. However, the Court found that the scope of these AOI's were overbroad and not narrowly tailored, as the request seemed to seek information regarding both residential and commercial claims, even though this action pertains only to a commercial claim. As such, the Court finds that LAUI's objections are sustained in part, and limits these AOI's to only commercial claims which occurred after Hurricane Isaac.

> **AOI 11**: All training routinely provided to (or undertaken at your request by) adjusters who performed services on your behalf in connection with Hurricane Isaac, specifically including in your response any training such persons received with respect to any adjusting software referred to in your responses to either of the two preceding interrogatories.

LAUI argues that this area is over broad as it seeks testimony and documents related to the training of all adjusters performing services during the storm and includes the training related to adjusting software, which has not been alleged in Cedar Ridge's complaint. (R. Doc. 51-1, p. 7).

In opposition, Cedar Ridge addresses No. 11 with Nos. 23, 33, and 34. (R. Doc. 60, p. 6). Specifically, it argues that LAUI represents that it made efforts to process Cedar Ridge's claim by hiring Engle Martin & Associates, an independent adjuster; and UBSE, an independent engineering firm. Because it has sued LAUI for bad faith adjustment, Cedar Ridge contends that it must prove the "arbitrariness of or absence of probable cause for [LAUI's] failure to make payment on the claim." *Id.* at 7. Therefore Cedar Ridge argues that to the extent LAUI seeks "to attribute any

actions, mistakes or errors to its independent adjusters and vice versa, Cedar Ridge is conduct discovery to determine Landmark's training (AOI 11), the contents of its claims handling manuals (AOI 23), and the nature and content of written and oral communications made directly to its adjusters working specifically on Hurricane Isaac claims (AOI 33, 34)." *Id.*

Cedar Ridge also argues that LAUI's adjusters previously evaluated its loss at $1.5 million" dollars, but then later determined the covered loss was less than $378,000, therefore there is a disconnect between the adjusters and LAUI officials. As such, Cedar Ridge argues that whether or not LAUI "gave any directives to their adjusters, promulgated any best practices or customs relative to adjustment, or furnished any training to its adjusters," is probative to its claim of bad faith against LAUI for its adjuster overruling his initial findings. *Id.*

During oral argument, counsel for LAUI stated that an outside adjuster did not make the estimate here, and any questions regarding the training, background and experience can be delved into when the deposition of that adjuster / expert is taken. Therefore, the Court recommended that AOI No. 11 be amended to keep with the facts and confines of this case. Specifically the Court stated that AOI No. 11 should be amended to include training provided to staff or in-house adjusters for Hurricane Isaac claims, and how their training compares or relates to outside adjusters who adjusted Hurricane Isaac claims. Therefore, the objection to No. 11 is sustained and overruled in part.

**AOI 12**: All other methods, in addition to the information provided in response to inquiry No. 10, by which you established, updated, and communicated repair costs to be used in calculating damage estimates for your insureds' properties, and all guidelines, protocols, and/or efforts established or undertaken by you to ensure that repair costs reflected current repair costs.

LAUI argues that because Cedar Ridge has alleged breach of contract, breach of duty and bad faith pursuant to La. R.S. 22:1973 and La. R.S. 22:1892, and a violation of its obligations to pay Cedar Ridge according to the insurance agreement, the current topic presents no evidentiary value

in this matter whatsoever. (R. Doc. 51-1, p. 7).

Cedar Ridge argues that this area of inquiry directly relates to Nos. 9 and 10, which covers the methods used and alternate methods of maintaining the accuracy of repair costs, in addition to those covered in No. 10. Cedar Ridge argues that because LAUI has received in excess of $1,000,000, in receipts from it's costs paid in roof repair, it believes that this information is relevant, as LAUI contends that the damages to the roof are only $378,000, and therefore under the policy limits. (R. Doc. 60, p. 5-6).

During oral argument, the Court found that this topical area should be stricken in its entirety from the notice of deposition, as it is not probative, nor would it produce information that is likely to lead to the discovery of relevant evidence in this case.

**AOI 15**: Every coverage form you utilized in Louisiana as of August 29, 2012, with respect to commercial properties, and identify every coverage form for which you sought or intended to seek approval for use in Louisiana as of that date.

LAUI objects to this inquiry on the area of inquiry and document production on the basis that the coverage forms utilized for commercial properties are not relevant, nor reasonably calculated to lead to admissible evidence as to Cedar Ridge's claims for beach of contract or for bad faith damages. (R. Doc. 51-1, p. 7). LAUI also argues that Cedar Ridge has not alleged that the insurance coverage forms in its policy were not approved for Louisiana. *Id.* Therefore, this is irrelevant, overbroad and burdensome to require LAUI to produce all of this information.

In opposition, Cedar Ridge argues that LAUI has raised the defense that tarps fastened to the roof by Roof Tech caused the damages to its roof, which is an exclusion under its liability insurance policy. (R. Doc. 60, p. 7-8). It contends that this AOI will permit Cedar Ridge to determine if LAUI used any definitions expanding the term "repair" or limiting the term "mitigation" were used, or attempted to be utilized, prior to Hurricane Isaac, which would help foster its bad faith and breach

of contract arguments. *Id.*

During oral argument, the Court found that this topical area should be stricken in its entirety from the notice of deposition, as it is not relevant to the merits of this case.

> **AOI 21**: Any legal opinions from either in house counsel or outside counsel regarding claims asserted as a result of Hurricane Isaac, and whether any of these opinions were used or rejected in formulating general policy or any specific policy regarding the Riverlands claim. (This area of inquiry will be limited to non-privileged opinions).

LAUI argues that this area is vague, overbroad, unclear and unduly burdensome as it fails to define what would be considered "non-privileged." (R. Doc. 51-1, p. 8). LAUI argues that any legal opinions from either its in house counsel or outside counsel regarding Hurricane Isaac is privileged and not discoverable.

In opposition, Cedar Ridge contends that it "seeks non-privileged opinions produced in connection with Hurricane Isaac, and whether those opinions were utilized in shaping policy, and provides by its own terms broad privilege limitations." (R. Doc. 60, p. 8). Cedar Ridge argues that it is entitled to depose LAUI on this area because it bears directly on Landmark's bad faith defenses. *Id.*

During oral argument, the Court struck this area of questioning because LAUI could not point to a possible area that would not be subject to the attorney client privilege.

> **AOI 23**: Your claims handling manuals or guidelines, including additions, deletions and other revisions from previous versions and any other materials used to train claims handlers for use in handling of the kind at issue, including but not limited to broad settlement policies or any changes of policy.

LAUI requests that the Court limit this AOI and document request to claims handling manuals and guidelines relative to the Hurricane Isaac claims, as the request for what is stated above, is unduly burdensome and overly broad.

In opposition, Cedar Ridge addresses its opposition with No. 11, 33, and 34 as provided above. (R. Doc. 60, p. 6); see *supra,* AOI 11.

During oral argument, the Court found that this topical area should be stricken in its entirety from the notice of deposition, as it is not relevant to the merits of this case.

**<u>AOI 26</u>**: Your document retention policy.

LAUI argues that the agreement between counsel during the October 14, 2013 discovery conference was that this item would be limited to document retention in the claim for this loss. As such, LAUI requests this AOI be limited as per the parties agreement. (R. Doc. 51-1, p. 8).

In opposition, Cedar Ridge represents to the Court that it has already advised LAUI of its intent to ask only about retention on the instant file, but that LAUI should not be entitled to a protective order from "an area of inquiry as innocuous as AOI 26. For example, should any other document become known through Landmark's deposition, Cedar Ridge should not be precluded from sending discovery to Landmark inquiring into their document retention policy beyond the claim file." *Id.*

During oral argument, the Court found struck this area noting that it is not relevant.

**<u>AOI 33</u>**: The nature and content of any written communication disseminated to your adjusters and others working on your behalf generally and working specifically in connection with claims asserted as a result of Hurricane Isaac.

LAUI argues that the agreement between counsel during the October 14, 2013 discovery conference was that this AOI would be limited to written communications to adjusters related to policy procedures and method in connections with claims asserted as a result of Hurricane Isaac. As such, LAUI requests this AOI be limited as per the parties agreement. (R. Doc. 51-1, p. 9).

In opposition, Cedar Ridge argues that this area of inquiry was addressed specifically in its opposition to AOI 11. During oral argument, Cedar Ridge couched its objection as one based on

overbreadth and that the topical area encompasses irrelevant information.

The Court amended this request and AOI 34 below, to include only instructions given to adjusters regarding the adjustments of Hurricane Isaac claims, which may include both verbal and/or written communications.

**AOI 34**: The nature and content of any oral communication disseminated to your adjusters and others working on your behalf generally and working specifically in connection with claims asserted as a result of Hurricane Isaac.

LAUI argues that the agreement between counsel during the October 14, 2013 discovery conference was that this AOI would be limited to written communications to adjusters related to policy procedures and method in connections with claims asserted as a result of Hurricane Isaac. As such LAUI requests that this AOI be limited as per the parties agreement. (R. Doc. 51-1, p. 9). The Court addressed this argument in its ruling on AOI 33.

**AOI 35:** All litigation matters in which a corporate representative has testified by deposition or at trial during past 5 years as a corporate representative for you.

LAUI objects to this AOI on the grounds that prior cases in which a corporate representative has testified bears no relevance to the present matter, and requiring it to produce all documents associated with any 30(b)(6) deposition taken in the past five years in unduly burdensome and overbroad. (R. Doc. 51-1, p. 9).

Cedar Ridge contends that it has already advised LAUI that it did not seek production of documents applicable to this area of inquiry, but that it reserves its rights to seek transcripts of other corporate depositions. Specifically, Cedar Ridge argues that it is entitled to conduct this discovery because an alternative or inconsistent position taken by Landmark in other litigation is direct evidence of arbitrariness, capriciousness, and absence of probable cause in their handling of the

instant claim. (R. Doc. 60).

During oral argument, the Court found that this topical area should be stricken in its entirety from the notice of deposition, as it is irrelevant and overbroad.

**IV. <u>Conclusion</u>:**

**IT IS ORDERED** that the **Motion for Protective Order to Limit Scope of Rule30(b)(6) Deposition and Accompanying Request for Production of Documents (R. Doc. 51)**, filed by Defendants, Landmark American Insurance Company, ("LAIC") and RSUI Indemnity Company ("RSUI") be **GRANTED IN PART** and **DENIED IN PART.**

**IT IS GRANTED** as to Exhibit B in its entirety.

**IT IS GRANTED** as to Exhibit A as to area of inquiry numbers: 12, 15, 21, 23, 26, and 35.

**IT IS GRANTED IN PART** as to Exhibit A, area of inquiry numbers: 9, 10, 11, 33, 34; as set forth in detail above.

**IT IS DENIED IN PART** as to Exhibit A, area of inquiry numbers: 9, 10, 11, 33 and 34 as stated in the notice of deposition that was propounded on Defendants. Plaintiff is hereby ordered to amend the notice to effectuate the limitations imposed by this order to areas of inquiry numbers 9, 10, 11, 33, and 34 as set forth in full detail above.

New Orleans, Louisiana, this 6th day of December 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**