## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CEDAR RIDGE, LLC**                                                    **CIVIL ACTION**

**VERSUS**                                                                        **No. 13-672**

**LANDMARK AMERICAN INSURANCE**                          **SECTION I**
**COMPANY ET AL.**

## ORDER

Before the Court is a motion[1] by plaintiff, Cedar Ridge, LLC, to exclude the testimony and

reports of Philip Ambrose ("Ambrose") and Richard G. Windham ("Windham"), both of whom are

proposed expert witnesses for defendants, Landmark American Insurance Company and RSUI

Indemnity Company. Defendants oppose[2] the motion. For the following reasons, the motion

**DENIED**.

The Court assumes familiarity with the factual background of the case.[3]

## STANDARD OF LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness

testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v.*

*Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine
> a fact in issue;

---

[1]R. Doc. No. 94.
[2]R. Doc. No. 105.
[3]*E.g.*, R. Doc. No. 93.

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert*, 509 U.S. at 596.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

**ANALYSIS**

Plaintiff argues that Ambrose should not be permitted to testify as an expert because his proposed testimony is cumulative, it will not assist a trier of fact, and it is unreliable.[4]

Plaintiff argues that Ambrose's proposed testimony is cumulative because "his report is, in large measure, an affirmation" of two other expert reports, both written by Ian S. Cranton ("Cranton"), an engineer for Unified Building Science & Engineering, Inc ("USBE").[5] Plaintiff also argues that Ambrose's testimony is cumulative relative to the proposed testimony of Kevin Kiddell ("Kiddell").[6] Both Cranton and Kiddell appear on defendants' witness list.[7] Defendants respond that Ambrose "conducted numerous inspections first hand of the property and independently assessed the damages to the roof and evaluated the damage repair estimates submitted by plaintiff's own adjuster."[8] In light of the parties' arguments, including plaintiff's failure to cite to legal authority, the Court cannot conclude at this time that the proposed testimony constitutes "needless presentation of cumulative evidence" pursuant to Rule 403.

Plaintiff argues that Ambrose's testimony will not assist the trier of fact because his report "lists ten separate opinions, each of which is either a fact observation in this case, or a recitation of original documents without interpretation or ownership."[9] The report consists of 19 pages, the last few of which contain a ten-point summary of Ambrose's opinions.[10] Plaintiff's conclusory assertion that each of the ten points is "either a fact observation in this case, or a recitation of original documents without interpretation or ownership" is unpersuasive. The first summary point states, for

---

[4]R. Doc. No. 96-1, at 3.
[5]R. Doc. No. 96-1, at 3-4.
[6]R. Doc. No. 96-1, at 3.
[7]R. Doc. No. 83, at 1
[8]R. Doc. No. 105, at 3.
[9]R. Doc. No. 96-1, at 4.
[10]R. Doc. No. 104-2, at 19.

-4-

example, that plaintiff's prompt reporting of the claim, prior to the installation of tarps, "could have avoided many of [the] issues that now exist with the claim and the issue of the unnecessary damage caused by Roof Tech's mechanically fastened tarps."[11] Such a statement is clearly an opinion based on Ambrose's review of the underlying facts.

Plaintiff asserts that Ambrose's testimony is unreliable because "he was not present when the roof insulation was removed, and he did not distinguish between wind damage and tarp damage."[12] Both of these arguments may be thoroughly explored through cross examination. To the extent that a ruling on the pending motions for summary judgment gives rise to a dispute as to the relevance of testimony that does not distinguish between wind damage and tarp damage, this issue may be raised after the Court rules on those motions.[13]

Insofar as plaintiff intends to argue that Ambrose's testimony is unreliable because he relied on the work of other experts, plaintiff has not suggested that Ambrose's testimony would permit him to serve as the "mouthpiece of a scientist in a different specialty," *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002), nor has plaintiff presented legal authority for this argument. Moreover, "when an expert relies on the opinion of another, such reliance goes to the weight, not the admissibility of the expert's opinion." *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 9 (1st Cir. 2001).

With respect to Windham, plaintiff argues that he was "proffered as an expert solely for his credentials, which are certainly more extensive than Cranston's" and that Windham has done

---

[11]R. Doc. No. 105-2, at 17.
[12]R. Doc. No. 96-1, at 4.
[13]Nothing in this Order should be construed to reflect on the pending motions for summary judgment relative to the potential applicability of a policy exclusion.

nothing other than reviewing Cranston's work.[14] Defendant responds that Windham "evaluated and performed the peer review of the reports submitted by USBE," including Cranston's reports.[15]

To the extent that plaintiff contends that Windham's testimony would be cumulative of Cranston's,[16] the Court reserves ruling on this argument until trial. To the extent that plaintiff argues that Windham has not done "his own work, observations, or application of facts to data in this case," the Court is unpersuaded. The sole case cited by plaintiff to support its motion relative to Windham is *Anderson v. Bristol Myers Squibb Co.*, No. 95-003, 1998 WL 35178199, at *5 (S.D. Tex. Apr. 20, 1998), which addresses the requirements of the "inferential process," by which "an expert cannot simply start with reliable data and, from that data, draw any sort of conclusion." Plaintiff has not identified, however, an "analytical gap" in Windham's opinions, see *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997), or otherwise shown that Windham's conclusions are unsupported by the evidence.

**CONCLUSION**

If the testimony of these proposed experts proves to be cumulative, plaintiff may raise this argument at trial. At present, the Court has not been provided with evidence or legal authority suggesting that exclusion pursuant to Rule 403 is appropriate. With respect to Rule 702, plaintiff's attacks on the reliability of defendants' experts do not include citations to relevant legal authority and are otherwise unpersuasive. Finally, other than attacking its reliability, plaintiff has failed to specify why Ambrose's testimony would not assist the jury. Accordingly,

---

[14]R. Doc. No. 96-1, at 4-5.
[15]R. Doc. No. 105, at 4-5.
[16]R. Doc. No. 96-1, at 6.

**IT IS ORDERED** that the motion is **DENIED** without prejudice to plaintiff's right to reurge its arguments relative to Rule 403 at trial and to challenge the relevance of any witness's testimony after the Court rules on the pending motions for summary judgment.

New Orleans, Louisiana, February 21, 2014.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**