## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CEDAR RIDGE, LLC**                                         **CIVIL ACTION**

**VERSUS**                                                              **No. 13-672**

**LANDMARK AMERICAN INSURANCE**                  **SECTION I**
**COMPANY ET AL.**

### ORDER AND REASONS

Before the Court are cross motions[1] for partial summary judgment by plaintiff, Cedar Ridge,

LLC ("Cedar Ridge"), and defendants, Landmark American Insurance Company ("Landmark") and

RSUI Indemnity Company ("RSUI"). For the following reasons, plaintiff's motion is **DENIED** and

defendants' motion is **GRANTED**.

### BACKGROUND

Cedar Ridge owns the Riverlands Shopping Center,[2] which was insured by Landmark from

April 11, 2012, to April 11, 2013.[3] Hurricane Isaac caused damage to the Riverlands Shopping

Center on August 29, 2012.[4] The parties disagree as to the extent of the damage caused by the

hurricane.[5] In the weeks following the storm, Roof Technologies, Inc. ("Roof Tech") installed

approximately 21 tarps on the roof of the Riverlands Shopping Center, utilizing wooden batten strips

screwed into place and sealed with liquid roofing cement.[6] Roof Tech also used peel-and-stick

---

[1]R. Doc. No. 102; R. Doc. No. 104.
[2]R. Doc. No. 104-2, ¶ 1; R. Doc. No. 115, ¶ 1.
[3]R. Doc. No. 104-2, ¶ 2; R. Doc. No. 115, ¶ 2.
[4]R. Doc. No. 104-2, ¶ 3; R. Doc. No. 115, ¶ 3.
[5]R. Doc. No. 104-2, ¶ 3; R. Doc. No. 115, ¶ 3.
[6]R. Doc. No. 104-2, ¶ 5; R. Doc. No. 115, ¶ 5.

adhesives ("adhesives") on the roof.[7] Landmark has alleged that the tarp installation and the use of adhesives by Roof Tech caused additional damage and that such damage is subject to a policy exclusion for faulty, defective, or inadequate repairs and/or workmanship.[8]

The issue before the Court is whether the installation of tarps and the use of adhesives constituted repairs and/or workmanship within the meaning of the policy, excluding any damage caused by faulty, defective, or inadequate performance of these activities.[9]

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing

---

[7]R. Doc. No. 102-3, ¶ 7; R. Doc. No. 114-1, ¶ 7.
[8]R. Doc. No. 104-2, ¶¶ 10-11; R. Doc. No. 115, ¶¶ 10-11.
[9]*E.g.*, R. Doc. No. 104-1, at 1; R. Doc. No. 102-1, at 8.

of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,'

by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine

issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party

responding to the motion for summary judgment may not rest upon the pleadings, but must identify

specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to

be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at

255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## II. Scope of Motions

Cedar Ridge seeks a partial summary judgment declaring that the policy exclusion invoked

by Landmark does not apply to the installation of tarps by Roof Tech.[10] Alternatively, Cedar Ridge

argues that a genuine issue of material fact precludes Landmark's own motion for a partial summary

judgment, which seeks a declaration that the policy excludes coverage for any damages caused by

the faulty, defective, or inadequate installation of tarps and the use of adhesives.[11]

Cedar Ridge asserts that, while Roof Tech did several types of work at Riverlands Shopping

Center, "the only allegations which Landmark has attempted to support with evidence are that the

penetrations through the roof made by screwing the tarp to the roof membrane caused damage.

---

[10]R. Doc. No. 104-1, at 1.

[11]Landmark mentions in passing that plaintiff failed to plead in its complaint that Roof Tech caused
any damage or that Landmark is responsible for any damage. R. Doc. No. 102, at 1. Landmark failed
to brief this issue, however, in its memorandum in support of its motion for summary judgment. R.
Doc. No. 102-1, at 5.

Therefore, the 'peel and stick,' and adhesives [used by Roof Tech] are not genuinely at issue."[12] Landmark, however, challenges both the "improper tarp and peel and stick repairs"[13] as subject to the policy exclusion.

The pending motions address only whether the installation of tarps and the use of adhesives constitute repairs and/or workmanship within the meaning of the exclusion. The Court has not been asked to decide the separate issue of whether Roof Tech performed these tasks in a faulty, defective, or inadequate manner.

**III. Policy Interpretation**

"Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc.*, 180 F.3d 664, 668 (5th Cir. 1999) (citing *Tex. E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)). "The interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code. art. 2045. "The words of a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).

"When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tex. E. Transmission*, 145 F.3d at 741) (internal quotation marks omitted). "In the context

---

[12]R. Doc. No. 104-1, at 9-10.
[13]R. Doc. No. 102-1, at 10.

of contract interpretation, only when there is a choice of reasonable interpretations of the contract

is there a material fact issue concerning the parties' intent that would preclude summary judgment."

*Id.* at 669.

The parties disagree as to whether Roof Tech's installation of tarps and the use of adhesives

fall within the categories of repairs and/or workmanship, as set forth in a policy exclusion.[14] The

policy exclusion provides:

> 3. We will not pay for loss or damage caused by or resulting from any of the
> following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a.
> through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage
> caused by that Covered Cause of Loss.
>  . . . .
> c. Faulty, inadequate or defective:
> . . . .
> (2) Design, specifications, workmanship, repair, construction, renovation,
> remodeling, grading, compaction;
> (3) Materials used in repair, construction, renovation or remodeling; or
> . . . .
> of part or all of any property on or off the described premises.

The policy does not further define "repair" or "workmanship."[15]

Landmark contends that the installation of tarps and the use of adhesives constitute repairs.[16]

Landmark relies in part on Cedar Ridge's complaint, which on its face refers to the installation of

tarps and the use of adhesives as repairs.[17] According to Cedar Ridge, however, this section of its

---

[14]R. Doc. No. 112, at 4; R. Doc. No. 113, at 6.

[15]R. Doc. No. 112, at 3. The Louisiana Fifth Circuit Court of Appeal has considered a similar exclusion and observed, "The insurer by this exclusion intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured or someone authorized by him." *Husband v. Lafayette Ins. Co.*, 635 So. 2d 309, 311 (La. App. 5 Cir. 1994).

[16]R. Doc. No. 102-1, at 10-11 (citing R. Doc. No. 1, at 6).

[17]R. Doc. No. 102-1, at 10; *e.g.*, R. Doc. No. 1, at 3 ("repair workers . . . fastened tarps"); R. Doc. No. 1, at 7 ( "emergency repairs, mitigating repairs, repairs performed at the insurer's instruction").

complaint addresses Landmark's adversarial position and is not a characterization of Cedar Ridge's own position.[18]

The Court concludes that a plain reading of the complaint shows that Cedar Ridge characterizes the installation of tarps and the use of adhesives as repairs. The paragraph at issue alleges:

> By misrepresenting material facts pertinent to a coverage issue, specifically, by representing that the tarp repairs performed by Roof Technologies, Inc. on or about September 4, 2012, were the cause of the roof failure, when the insurers had knowledge that the roof membrane had failed well before the installation of tarps on the roof; and by representing ice/water peel-and-stick repairs performed by Roof Technologies, Inc. on October 19, 2012, contributed to the failure of the roof, when the insurers had knowledge that the roof failed prior to the repairs, and that the insurers own engineers recommended the ice/water peel-and-stick repairs. In fact, both repairs were necessary to preserve the continuous operation of lessee businesses in the shopping center, obligatory under the insured's duty to mitigate, and in the case of the ice/water peel-and-stick repair, performed at the instruction of insurer's own representative. In both instances of misrepresentation, Landmark and RSUI asserted that the repairs would be subject to a coverage exclusion.[19]

Read in context, it is clear that Landmark's alleged misrepresentation is that Roof Tech's work was faulty – not that Roof Tech performed repairs. Moreover, Cedar Ridge's own position is emphasized by the statement that "[i]n fact, *both repairs* were necessary to preserve the continuous operation of lessee businesses . . . ." (emphasis added).

In any event, regardless of Cedar Ridge's complaint, the only reasonable interpretation of "repair" encompasses Roof Tech's installation of tarps and the use of adhesives. "The term 'repairs' must be given its generally prevailing meaning and be construed according to common usage.

---

[18]R. Doc. No. 113, at 2. Cedar Ridge does not argue that its complaint does not constitute competent summary judgment evidence, and the Fifth Circuit "has long noted that factual statements in the pleadings constitute binding judicial admissions, or at the very least adverse evidentiary admissions." *McCreary v. Richardson*, 738 F.3d 651, 659 n.5 (5th Cir. 2013) (citations omitted).
[19]R. Doc. No. 1, at 6.

Merriam-Webster's Collegiate Dictionary 991 (10th ed. 1995) defines 'repair' as 'to restore by replacing a part or putting together what is torn or broken.' [Louisiana] jurisprudence has similarly defined it as, to fix anything that is broken." *Int'l Paper Co. v. E. Feliciana Parish Sch. Bd.*, 850 So. 2d 717, 721 (La. App. 1 Cir. 2003) (citations omitted). Here, the installation of tarps and the use of adhesives were "incidental to and a part of" the ongoing repair process. *See id.*

According to Cedar Ridge, "[t]he tarps were intended to protect the structure, and mitigate damages, but repairing the roof is an altogether different matter."[20] Cedar Ridge also argues that the policy's separate provisions for the costs of "protect[ing] the Covered Property from further damages" and for the costs of "repairing or replacing" the property demonstrate that the protection of property and the repair of property are separate categories of losses.[21] But these arguments ignore the fact that the words repair, mitigation, and protection are not mutually exclusive. *See Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 506 (5th Cir. 2000) (declining to impose an insured's "proffered dichotomy" between types of physical damage where there was no basis for such dichotomy in the policy); *see also, e.g.*, *Copelin v. State Farm Ins.*, No. 06-4115, 2009 WL 361088, at *6 (E.D. La. Feb. 12, 2009) (referring to a roof tarp as a type of repair and comparing it to other temporary repair options); *Aginsky v. Farmers Ins. Exch.*, 409 F. Supp. 2d 1230, 1233, 1236 (D. Or. 2005) (referring to a roof tarp, which was intended to provide temporary protection, as an emergency repair).

In sum, Cedar Ridge admits in its complaint that the installation of tarps and the use of adhesives constitute repairs. This admission is consistent with the plain meaning of the term

---

[20]R. Doc. No. 104-1, at 10.
[21]R. Doc. No. 104-1, at 11.

"repair," and no other reasonable interpretation exists. Accordingly, Landmark is entitled to partial summary judgment as to whether the installation of tarps and the use of adhesives constitute repairs for purposes of interpreting the policy exclusion.

Alternatively, Landmark is entitled to partial summary judgment as to whether the installation of tarps and the use of adhesives constitute workmanship. As Cedar Ridge acknowledges, in *In re Chinese Manufactured Drywall Products Liability Litigation*, 759 F. Supp. 2d 822, 845 (E.D. La. 2010), Judge Fallon observed that "[f]aulty workmanship focuses on the . . . action of installing . . . the product," rather than on "the quality or character of the material." For an example, he cited to *Nuerge v. Coldewy Corp.*, 14 So. 3d 39, 44 (La. App. 5 Cir. 2009), in which the court affirmed "that the improper installation of shingles which caused water leaks constituted faulty workmanship defects." *In re Chinese Drywall*, 759 F. Supp. 2d at 844-45. Cedar Ridge argues only that "Landmark has put forth no evidence to suggest that the 'quality' of the installation of the tarps" was faulty, but that issue is not before the Court. Accordingly, the Court concludes that the installation of tarps and the use of adhesives also constitute workmanship.

## CONCLUSION

The exclusion applies to repairs and/or workmanship. The plain meaning of both terms encompasses the installation of tarps and the use of adhesives. Moreover, Cedar Ridge's complaint admits that these activities fall within the term "repair." The Court concludes that the installation of tarps and the use of adhesives by Roof Tech constitute repairs and/or workmanship for purposes of interpreting the policy exclusion. Whether any such work was faulty, defective, or inadequate such that the exclusion applies is not before the Court.

**IT IS ORDERED** that defendants' motion for partial summary judgment is **GRANTED** and that plaintiff's motion for partial  summary judgment is **DENIED**.


New Orleans, Louisiana, March 5, 2014.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**